M. T. LANE, BY NEXT FRIEND, MARY C. LANE, v. CREG J. LANE, E. J. LANE, J. WILLIE BOYCE, AND JESSE E. CHAPPELL.

(Filed 11 October, 1961.)

**1. Adverse Possession § 15—**

Where the description in a deed in proper form embraces not only the land owned by grantor but also a contiguous additional strip of land, such deed conveys the land owned by the grantor and constitutes color of title as to the strip of land embraced in the description but not owned by the grantor.

**2. Adverse Possession § 4—**

Where there is lappage in the descriptions in deeds to contiguous tracts of land and the grantee in the senior deed is not in actual possession of the lappage and the grantee in the junior deed is in actual possession thereof, such possession will ripen title in the grantee in the junior deed after seven years.

**3. Boundaries § 7; Quieting Title § 2—**

Ordinarily when each of the parties owning adjoining tracts of land admits the title of the other, only the location of the true dividing line is involved and the question of title is not presented, G.S. 38-1 *et seq.*, but when one of the parties claims title to the lappage by adverse possession and asserts his ownership of all or a part of the lappage by reason of such adverse possession, the proceeding is assimilated into an action to quiet title, and the issue of title raised by the pleadings should be determined by a jury. G.S. 1-399.

**4. Same—**

Where defendants deny that plaintiff is the owner of the land as described in the complaint, allege good record title in themselves to an adjoining tract and title to a twenty foot strip of land along the southern boundary of their tract by 20 years adverse possession and by 7 years adverse possession under color of title, the pleadings raise the question of defendants' title by adverse possession to the twenty foot strip, and the issue of their title to such strip must be determined by a jury notwithstanding defendants' admission that the southern boundary of their land is the northern boundary of plaintiff's land.

APPEAL by defendants Creg J. Lane and E. J. Lane from *Parker, J.,* January Term, 1961, of PERQUIMANS.

Plaintiff is now nineteen or twenty years of age. His mother, Mrs. Mary C. Lane, the widow of A. C. Lane, was appointed next friend and prosecutes this action in plaintiff's behalf.

A. C. Lane, plaintiff's stepfather, died, testate, in November, 1958. His will was probated November 6, 1958. The only portion thereof in the record is this dispositive provision: "I also give to M. T. Lane the 'Henry Copeland Pine Thicket' containing eighteen acres, and 8½ acres of the Thomas Lamb land." (Note: The "8½ acres of the

Thomas Lamb land" is not involved in this litigation.) Plaintiff testi-
fied the will "is dated 1946."

A. C. Lane and defendant E. J. Lane were brothers. Defendant Creg
J. Lane is a son of E. J. Lane and nephew of the late A. C. Lane.

On May 30, 1960, under G.S. 38-1, plaintiff filed a petition with the
clerk alleging in paragraph 1 his ownership of a tract of land in Belvi-
dere Township, Perquimans County, particularly described and re-
ferred to as "containing 18 acres, more or less."

Plaintiff alleged further: His said tract adjoins the lands of Creg J.
Lane, Jesse E. Chappell and Willie Boyce. Defendant Creg J. Lane
disputes the correctness of the boundary lines of plaintiff "as set out
in the deeds" referred to in the description set forth in paragraph 1
where his land and plaintiff's land adjoin. Defendants Chappell and
Boyce, to the best of plaintiff's knowledge, do not question the correct-
ness of plaintiff's boundary lines as set out in said deeds but are made
parties so the judgment will establish all of plaintiff's boundary lines.

Defendant Creg J. Lane answered. It was stipulated that E. J. Lane
voluntarily made himself a party defendant and adopted as his own
the answer filed by Creg J. Lane. Hereafter, "defendants" refers to
Creg J. Lane and E. J. Lane.

In answering paragraph 1 of the complaint, defendants admitted
plaintiff owns a tract of land "adjoining the lands of Creg J. Lane,
Jessie E. Chappell and Willie Boyce." They denied all other allegations
of said paragraph and alleged: ". . . it is specifically denied that the
plaintiff owns a tract of land having in its entirety the description as
set out in said section."

Defendants, for further answer, alleged: Creg J. Lane, subject to
the life estate of his father, E. J. Lane, "is the owner of that certain
tract well known as the Thompson Boyce tract, which tract adjoins
the plaintiff's lands on the North"; that the location of their southern
boundary is a line beginning on the east side of the Sandy Ridge Road,
approximately 514.8 feet north of the Martin White corner, and run-
ning south 59° east approximately 1374 feet to the lands of Jesse E.
Chappell, shown on a map "prepared for the plaintiff by T. J. Jessup,
Registered Surveyor, dated April 25, 1959, bearing the legend in part,
'A. C. Lane Estate, Henry Copeland Thicket Tract' "; and that they,
and those under whom they claim, had been in the open, notorious
and adverse possession of a strip or parcel of land, having a width of
approximately 20 feet, lying immediately to the north of the northern
boundary of the "Henry Copeland Thicket Tract" as shown on the
Jessup map, for more than seven years under color of title and for
more than twenty years without color of title.

It was stipulated "that the hearing before the clerk was waived,

and that the matter might be heard in the first instance before the court and a jury."

At trial in superior court, three issues were submitted and answered by the jury, to wit:

"1. What is the true dividing line between the lands of the petitioner, M. T. Lane, and the lands of the defendants, E. J. and C. J. Lane, as to petitioner's northern boundary? Answer: C-D

"2. What is the true dividing line between the lands of petitioner, M. T. Lane, and the lands of the defendants, E. J. Lane, C. J. Lane and Willie Boyce, as to petitioner's Southern boundary? Answer: A-B

"3. What is the true dividing line between the lands of petitioner, M. T. Lane and the lands of the defendant, Jesse E. Chappell, as to petitioner's Eastern boundary? Answer: B-C"

Defendants tendered, for submission as the first and second issues, these additional issues: (1) "Was the 20-foot strip of land described in deed from Thompson Boyce to A. C. Lane, Book 20, page 101, included in the devise by A. C. Lane to M. T. Lane of the Henry Copeland Thicket?" (2) "Are the defendants, E. J. Lane and C. J. Lane, the owners of that certain tract or parcel of land, 20 feet in width, lying to the North of the Northern boundary of the parcel of land described in deed from Henry Copeland to A. C. Lane, Deed Book 17, page 354?" The court refused to submit these issues and defendants excepted.

The court adjudged the true dividing lines were the lines A to B, B to C, C to D, as shown on the court map; and it was ordered that these lines be marked, a map made and filed, etc. From this judgment, defendants appealed, assigning errors.

*LeRoy, Goodwin & Wells for plaintiff, appellee.*
*John H. Hall for defendants Lane, appellants.*

BOBBITT, J.   The map, reproduced on the next page, was prepared by S. Elmo Williams, Court Surveyor.

COURT MAP
M. T LANE  vs  CREG J. LANE
PERQUIMANS COUNTY , NORTH CAROLINA
SCALE I INCH = ·OO FEET OCT 18, 1960
S Elmo Williams　REG. SURVEYOR

Creg Lane

S 61°15' E　1360'

I 36 ACRES

20'　　　　　　　　　　　20'

S 59° 55' E　1389'

I6 4 ACRES

Lane
461 I'

N 61°15' W　1723'

S 61° 05' E　718 5'

Creg Lane

Post

Concrete Stone

SANDY RIDGE ROAD 60'
N 37° E 3063'

3' South of Ditch

M T. LANE  CLAIMS  LINES  A,B,C,D,A
CREG J. LANE  CLAIMS  LINES  A,G,H
D,E,F,C,D

The line, A to B, referred to in the second (submitted) issue, is not in controversy. As to the line, B to C, referred to in the third (submitted) issue, there is no controversy as between plaintiff and Jesse E. Chappell as to the portion thereof running from B to X. However, defendants contend the portion thereof from X to C is the dividing line between *their* land (the 20-foot strip) and the land of Jesse E. Chappell.

It is noted: The evidence discloses the point Y, shown on the court map, is on the east side of the Sandy Ridge Road, twenty feet south of D.

Originally, Henry Copeland owned a tract referred to as containing 17½ acres and Thompson Boyce owned a tract referred to as containing 5 acres. Thompson Boyce's southern boundary was Henry Copeland's northern boundary.

By deed dated February 3, 1928, filed for registration February 15, 1928, recorded in Book 17, page 354, Henry Copeland and wife conveyed his said tract to A. C. Lane. This tract, apart from a reduction in distances caused by the widening of Sandy Ridge Road, is the land embraced within the lines A to B to X to Y to A. The description in this deed refers to the Thompson Boyce line as the northern boundary of the tract therein conveyed.

By deed dated February 10, 1925, but acknowledged September 21, 1931, recorded in Book 20, page 101, Thompson Boyce conveyed to A. C. Lane a 20-foot strip. After the particular description, this 20-foot strip is referred to as "containing by estimation 1/2 acre to be the same more or less." This 20-foot strip is *a part* of the original Thompson Boyce tract. The southern line of the 20-foot strip is the northern line of the tract conveyed to A. C. Lane by Henry Copeland.

The 20-foot strip is the land embraced within the lines Y to X to C to D to Y.

The description in the petition is a composite of the descriptions in said two deeds to A. C. Lane.

Defendants offered in evidence a deed dated and filed September 23, 1938, recorded in Book 24, Page 108, by which Thompson Boyce, for a recited consideration of $300.00, purported to convey to E. J. Lane the entire original Thompson Boyce tract. Thereafter, E. J. Lane, reserving a life estate, purported to convey this tract to Creg J. Lane.

Each of the two deeds made by Thompson Boyce, the senior deed to A. C. Lane and the junior deed to E. J. Lane, describes and purports to convey the 20-foot strip. Clearly, the deed from Thompson Boyce to E. J. Lane did not vest in E. J. Lane title to the 20-foot strip. However, it purported to do so and, hence, constituted color of title to the 20-foot strip.

A deed which purports to convey a tract of land, sufficiently identified by the description set forth therein, but which fails to do so because of want of title in the grantor, constitutes color of title. *Carrow v. Davis*, 248 N.C. 740, 105 S.E. 2d 60; *Trust Co. v. Parker*, 235 N.C. 326, 69 S.E. 2d 841, and cases cited. The deed from Thompson Boyce to E. J. Lane conveyed a valid legal title to all land described therein except the 20-foot strip. As to the 20-foot strip, it constituted color of title. *Trust Co. v. Miller*, 243 N.C. 1, 6, 89 S.E. 2d 765.

Where, as here, there is a lappage, the pertinent rules for determining the relative rights of the parties are well established. The subject is fully discussed in *Currie v. Gilchrist*, 147 N.C. 648, 61 S.E. 581, where *Walker, J.*, after reviewing prior decisions, said: "We may therefore take it to be settled by this Court by a long and unvarying line of decisions that if the person who claims under the elder title have no actual possession on the lappage, such possession, although of a part only, by him who has the junior title, if adverse and continued for seven years, will confer a valid title for the whole of the interference, the title being out of the State." Also, see *Vance v. Guy*, 224 N.C. 607, 611, 31 S.E. 2d 766; *Berry v. Coppersmith*, 212 N.C. 50, 193 S.E. 3; *Whiteheart v. Grubbs*, 232 N.C. 236, 60 S.E. 2d 101.

The evidence, considered in the light most favorable to defendants, tends to show they have had actual adverse possession (see *Berry v. Coppersmith, supra*, and cases cited therein) of the 20-foot strip for more than twenty years and that neither A. C. Lane nor plaintiff has had actual possession of any part thereof. It is noteworthy that defendants' evidence tends to show their adverse possession extended to a fence and ditch south of the line Y to X but north of the line E to F.

Where, in a special proceeding under G.S. 38-1 *et seq.*, to establish a boundary line, the defendant, by his answer, denies the petitioner's title and, as a defense, pleads seven years' adverse possession under color of title under G.S. 1-38, or twenty years' adverse possession under G.S. 1-40, the proceeding is assimilated to an action to quiet title. In such case, as provided by G.S. 1-399, the clerk "shall transfer the cause to the civil issue docket for trial during term upon all issues raised by the pleadings." See *Simmons v. Lee,* 230 N.C. 216, 222, 53 S.E. 2d 79, and cases cited.

In the trial below, the court held and instructed the jury, "that title is not involved because the answer of the defendant or respondents admits that the lands of the petitioner adjoin their land, particularly on the Northern boundary of petitioner's land . . ." Too, while instructions were given as to adverse possession, the court instructed the jury that the evidence of defendants as to their adverse possession was "to be received and considered by you not as establishing title to any of the disputed area, but only to assist you in arriving at the true dividing line between the parties." Defendants excepted to each of these instructions.

Ordinarily, in a special proceeding under G.S. 38-1 *et seq.*, where it is admitted that the lands of petitioner and respondent adjoin, the only question presented is the location of the true dividing line. It was so held in *Plemmons v. Cutshall,* 234 N.C. 506, 67 S.E. 2d 501, cited by the court below as the basis for its ruling. But, for the reasons stated below, the factual situation here considered differs from that ordinarily involved in such cases.

The crucial question is whether the pleadings raised an issue as to plaintiff's alleged title to the 20-foot strip. The court below, by the instructions defendants assign as error, answered, "No." After careful consideration, we are of opinion, and so hold, that the court's ruling in this respect was erroneous.

Here, defendants do not contend the lines A to B to C to D to A were not located and shown on the court map in accordance with the calls in the two deeds to A. C. Lane. They admit their southern boundary is plaintiff's northern boundary. But this is so whether the true dividing line is the northern boundary of the 20-foot strip or the southern boundary thereof. Thus, the answer to the question, where is the true dividing line, a factual issue, depends upon the answer to the legal question, what is the true dividing line; and what is the true dividing line depends upon whether plaintiff or defendants own the 20-foot strip. Hence, the real controversy relates to the ownership of the 20-foot strip.

True, defendants contended, originally, the northern line of the

Henry Copeland tract and the southern line of the 20-foot strip was the line E to F, a line south of the line Y to X. There was evidence that this line was shown on the Jessup map as the northern line of the "Henry Copeland Thicket Tract." Defendants' original contention as to the location of the northern line of the Henry Copeland tract was based on the Jessup map. Plaintiff testified: "We had the Jessup survey map made . . . We did not agree to nothing that is on there." The Jessup map is not before us. Suffice to say, nothing appears to indicate plaintiff is bound thereby. E to F was not a marked line prior to the Jessup survey. The court surveyor testified that, according to the descriptions in the two deeds to A. C. Lane, the line shown on the map as Y to X is the northern line of the Henry Copeland tract and the southern line of the 20-foot strip. Defendants abandoned their original contention, thereafter contending the line Y to X, namely, the northern line of the Henry Copeland tract, was their southern boundary.

The significance of the allegations in the answer becomes clear in the light of the factual situation disclosed by the evidence. Defendants, in their answer, specifically denied that plaintiff owned "a tract of land having in its entirety the description" set out in paragraph 1 of the complaint. They alleged they owned the Thompson Boyce tract. They asserted their adverse possession of the 20-foot strip for more than twenty years. Considered in the light most favorable to them, we are of opinion, and so decide, that the gist of defendants' allegations was this: They admitted plaintiff's ownership of the tract conveyed to A. C. Lane by Henry Copeland. With this exception, they denied plaintiff's ownership of the land included in the description set forth in paragraph 1 of the complaint. They asserted title to the entire original Thompson Boyce tract, alleging title to the 20-foot strip, originally a part thereof, by adverse possession for more than twenty years. Hence, the answer of defendants is deemed sufficient to raise an issue as to the title to the disputed 20-foot strip. This being so, an issue as to the title to the 20-foot strip should have been submitted.

G.S. 8-39 provides: "In all actions for the possession of or title to any real estate parol testimony may be introduced to identify the land sued for, and fit it to the description contained in the paper-writing offered as evidence of title or of the right of possession, and if from this evidence the jury is satisfied that the land in question is the identical land intended to be conveyed by the parties to such paper-writing, then such paper-writing shall be deemed and taken to be sufficient in law to pass such title to or interest in such land as it purports to pass:

Provided, that such paper-writing is in all other respects sufficient to pass such title or interest."

In view of our conclusion that an issue of title as to the 20-foot strip is raised by the pleadings, it is incumbent upon plaintiff to establish that he acquired the title of A. C. Lane, if any, to the 20-foot strip, originally a part of the Thompson Boyce tract, under the devise to him by A. C. Lane of the "Henry Copeland Pine Thicket." The court below having ruled that no question of title was involved, there appeared to be no need for evidence tending to identify the "Henry Copeland Pine Thicket." Plaintiff is entitled to an opportunity to offer evidence as to the identity of the "Henry Copeland Pine Thicket" as of the time A. C. Lane executed his will. See *Trust Co. v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246, and cases cited.

The foregoing leads to these conclusions: (1) The judgment of the court below is vacated. (2) The answer to the second issue, establishing the location of plaintiff's southern boundary, and the answer to the third issue to the extent it establishes the true dividing line between plaintiff's land and the land of Jesse E. Chappell, stand; and these will be implemented when final judgment is entered. (3) The first issue, and the third issue to the extent it purports to establish X to C as the true dividing line between *plaintiff's* land and the land of Jesse E. Chappell, are set aside. A new trial, as between plaintiff and defendants Lane, for determination of title to the 20-foot strip, is awarded.

New trial.